UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

JULIE RODAS,

    Plaintiff,

v.                  607CV029

BI-LO, INC.,

    Defendant.

## ORDER

## I. INTRODUCTION

In this slip-and-fall case defendant Bi-Lo, Inc., a grocery store chain, moves the Court for summary judgment against plaintiff Julie Rodas, who claims that she slipped and fell on a "clear substance" while walking into Bi-Lo's Metter, Georgia store. Doc. # 12.

## II. BACKGROUND[1]

On 4/26/06, Rodas visited the Metter Bi-Lo store at 7:00 p.m., about 3 hours after it had stopped raining. Doc. # 16 at 36-38, 54; # 20 at 5; # 25 at 8. She wore flip flops on her feet. Doc. # 16 at 40. She "entered through the [store's] doors, and when [she] got inside the doorway, [she] slipped on one leg -- the right leg went behind [her] and [she] went down on [her] left knee and left arm." *Id.* at 41.

Rodas recalls no floor mats on the inside or outside of the store, and it was still wet outside the store. *Id.* at 37, 42. She does not claim that anything obstructed her view as she entered the Bi-Lo store that day. She does claim, however, that "[a] wet, clear substance ... on the floor" caused her fall. *Id.* at 43. But she can not say what it was. Nor did Rodas see the substance -- before or *after* the fall -- though she says that she knew it existed because (she wore Capri pants that day) the Capri cloth on her right shin area was "damp after [she] had [fallen]." *Id.* at 43-44. While she was on the floor for "[p]robably some seconds," no one saw her there. *Id.* at 44. Ater she picked herself up she did not look down, to discern what caused her to fall, because she was "too embarrassed that maybe somebody had seen me." *Id.* at 45.

Rodas concedes that she may have slipped on rainwater. *Id.* at 46 ("Q. Could it have been rain water? A. Yes, sir"). Yet, she insists that she did not see what she slipped on:

> Q. Did you see any water anywhere in the store at the entrance before or after you fell at any time that day?
>
> A. No, sir, because I wasn't looking down at my feet.
>
> Q. And I understand that. My main question was whether you saw anything at any time that day at the entrance to the store, any kind of foreign substance of any kind on the floor?
>
> A. No, sir.

*Id.* at 46-47.

Plaintiff nevertheless agrees that on a rainy day rainwater can wind up on an entrance floor area:

> Q. Okay. Are you aware that if it's rained outside that water can get tracked into a store from customers coming in and other people coming in the store?
>
> A. Yes, sir.

*Id.* at 47. In fact, she concedes that it is not unusual. *Id.* at 47-48.

---

[1] The Court will apply the summary judgment standards set forth in *Beard v. Banks*, 548 U.S. 521 (2006) and *Jacobs v. Gamez*, 2008 WL 899239 at * 3 (M.D.Fla 3/31/08) (unpublished).

A Bi-Lo co-manager who was on the premises and inspected the area shortly after Rodas's fall deposes that it in fact was rainwater. Doc # 22 at 6; *id.* at 45 ("Q. What did you see? A. Just like maybe a track when you walk in the store. And the water off your shoes when it's raining"); *id.* at 46-47 (the water covered an area smaller than two deposition exhibit labels); *id.* at 48 ("It was more like droplets. You know[,] more or less a track"); *id.* ("Q. What color was it. A. Clear"). This testimony is uncontradicted.

For that matter, Rodas has no reason to believe that it was anything besides rainwater.[2] *Id.* at 56-57. She points out however, that prior to the day she fell, Bi-Lo had kept mats in that entrance area but "they weren't there that day." *Id.* at 60-61; *see also id.* at 61 ("Q. When you were leaving the store and you reported falling did you ask them about the mats? A. They were pulling the mats and putting them in front of the door as we were walking out").

Plaintiff had shopped at this Bi-Lo many times in the past, doc. # 16 at 49, and nothing distracted or prevented her from looking down at the floor that day. *Id.* at 50. Bi-Lo's then co-manager remembers that wet-floor warning cones had been placed in the store's front entrance area minutes before Rodas's fall. Doc # 22 at 6, 53; *see also id.* at 53-54 (the area had been cleaned at 6:30 p.m.).

Rodas admitted that, when she shops she looks ahead and includes the ground beneath in her field of view. *Id.* at 50-51. But she failed to do that on 4/26/06:

> Q. Since you mentioned it, I'll ask. Did you look down towards the floor as you were walking into the store to see if there was anything on the floor?
>
> A. I was scanning ahead of me.
>
> Q. You were looking up?
>
> A. Looking eye level.

*Id.* at 47.

### III. ANALYSIS

Slip and fall claims turn on knowledge of the slip-and-fall-causing hazard -- whether the building's owner had knowledge *superior* to the victim about an *unreasonable* risk of harm and thus should have done something about it before the victim encountered it. Hence,

> proof of a fall, without more, does not give rise to liability on the part of a proprietor, because the true basis of a proprietor's liability for personal injury to an invitee is the proprietor's *superior knowledge* of a condition that may expose the invitee to an *unreasonable* risk of harm.

*Drew v. Istar Financial, Inc.*, ___ Ga.App. ___, 2008 WL 1903292 at * 2 (5/1/08) (quotes, footnote and alterations omitted; emphasis added). A normal amount of rainwater -- seeped or tracked by pedestrians into a building's entrance on a rainy day -- is simply *not* an unusual hazard which, in turn, poses an *unreasonable* risk of harm:

> [Georgia premises liability law] imposes

---

[2] In fact, there is no suggestion by either party here that the "clear substance" was anything but rainwater, and in a non-unusual accumulation at that. *See* doc. # 60 at 6 (Rodas's brief conceding that "[i]t could have been rain water"). Bi-Lo has adduced positive evidence, from Bi-Lo employee Williams, that it was. Doc. # 25 at 1-2; # 22 (Williams dep.) at 45. Under the undisputed evidence, no rational jury could find otherwise.

2

neither the impossible nor the improbable. In recognition of the fact that business proprietors are not insurers of safety, courts have routinely drawn a distinction between falls caused by *foreign* substances on the ground or floor and falls caused by a naturally occurring hazard. If the fall is caused by a natural occurrence, the risk of which the invitee should appreciate, the owner/occupier may be held liable only if the risk has become unreasonable. And we have held that the *normal* accumulation of water at the entrance of a business during a rainy day is *not* an unreasonable hazard.

Roberts v. Outback Steakhouse of Florida, 283 Ga.App. 269, 269-70 (2007) (footnotes omitted; emphasis added); *see also Diaz v. Wild Adventures, Inc.*, 289 Ga.App. 889, 891-92 (2008) (amusement park patron had knowledge equal to that of park operator as to the dangers posed by wet floor of bumper car ride and, thus, could not recover against operator in his premises liability action for injuries sustained when he slipped on the floor; patron was aware of rainwater mixed with dirt on the floor of the ride, and there was no evidence operator had knowledge of a special hazard posed by the accumulation of carbon dust on the floor during operation of the ride), cited in Ann., *Liability of proprietor of store, office, or similar business premises for injury from fall on floor made slippery by tracked-in or spilled water, oil, mud, snow, and the like*, 62 A.L.R.2D 6 (1958).

The *Roberts* court thus upheld summary judgment to the premises owner in that case, where a customer walking around inside of a restaurant crossed over the front entrance on a rainy day and slipped and fell on it. *Roberts*, 283 Ga. App. at 270-271 (the wet floor near restaurant entrance on rainy day was simply not a hazardous condition).

Plaintiff Drew in *Drew* also brought a "rainy day-slip-and-fall case" against a premises owner (the owner of the office building where she worked). 2008 WL 1903292 at * 1. Also similar to this case, Drew testified that as she entered her building, "I opened the door, and as soon as I opened the door, I slipped onto the water puddle. It was right in front of-about two or three steps in." *Id.* "[N]othing obstructed her view of the puddle and ... there was enough light, but ... she did not see the puddle before stepping in it. She was not sure she could have seen it had she looked. She did not observe any warning sign or mat at the entrance." *Id.*

Drew was required to "show that the water puddle constituted a hazardous condition and that [the building's owner] had actual or constructive knowledge of the purported hazard *superior* to her own." *Drew*, 2008 WL 1903292 at * 2 (emphasis added). She failed to meet that burden. *Id.* ("Drew has pointed to no evidence that the material she slipped in was anything other than rainwater, nor has she shown that the accumulation of water at the entrance to the building lobby was unusual") (citing *Roberts*, 283 Ga.App. at 270-271).

Rodas points to no evidence in this case showing that there was an unusual accumulation of water formed in front of Bi-Lo's entrance on 4/26/06. In that regard, Drew also made an issue out of the use of floor mats in her case:

> Drew contends that a fact question was raised by her testimony that she observed neither mats nor warning signs at the entrance where she fell. However, a proprietor has "no duty ... to warn those who enter his ... place of business during a rainy occasion that there may be accumulations of water on the floor which have been tracked in or that the presence of the water may cause the floor to be

3

slippery.

*Drew*, 2008 WL 1903292 at * 4.

Put another way: When it rains, people track rainwater into a building's entrance and some of it winds up on the floor. This is common knowledge and thus all are charged with knowledge of the slip-and-fall danger that it represents. Hence, it is not an *unreasonable* risk but an *expected* risk. And it certainly is not a risk over which an owner would have knowledge superior to that of an entering pedestrian. Rodas's failure to look down and detect the "tracked in" rainwater on Bi-Lo's floor does not alter that knowledge factor here. She *should* have looked out for herself; she cannot shift the risk of failing to do so to Bi-Lo.

Rodas heavily relies upon *Dickerson v. Guest Svcs. Co. of Va.*, 282 Ga. 771 (2007). Doc. # 20 at 8-9. The *Drew* court distinguished that case:

> In [*Dickerson*], the evidence showed that the plaintiff fell on rainwater on an *interior stairway*, and that the defendant's employee had been aware of the hazard for some time. Under those facts, a slippery condition caused solely by rainwater could constitute a hazard presenting an unreasonable risk of harm, and summary judgment was therefore inappropriate. In so ruling, the [Georgia] Supreme Court distinguished cases finding no hazardous condition where evidence showed that the plaintiff slipped on rainwater outside the premises or, as in the case at bar, at the *entrance* to defendant's premises.

*Drew*, 2008 WL 1903292 at * 2 (footnotes omitted; emphasis added). Similarly, here, Rodas points only to *entrance* rainwater in a "not unusual" amount.

Both the *Roberts* and *Drew* courts failed to stop at what would be a bright-line rule (*i.e.*, hold that if all a plaintiff shows is that a wet front entrance existed, she would have no case). Both also cited, as factor when they ruled for the building owners in those cases, whether the entrance area rainwater sat for an undue length of time. *Drew*, 2008 WL 1903292 at * 2 (pedestrian did not show that building owner had actual or constructive knowledge of purported hazard, specifically a water puddle, at entrance of building lobby, as required for pedestrian to prevail on her premises-liability action against owner, even though a security officer was nearby when pedestrian slipped and fell on a rainy day; pedestrian testified that she had no information as to whether owner or its employees knew about water before her fall, record did not show that security officer was either employed by or an agent of owner, and pedestrian was unable to say how long puddle had existed and did not present evidence that water in puddle represented an accumulation unusual for a rainy day); *Roberts*, 283 Ga.App at 270 (there was no evidence showing that water accumulation at the entrance of a restaurant on a rainy day was unusual or that the restaurant personnel allowed water to remain on floor long after rain ended, as would have exposed customer to unreasonable risk of harm, and thus, the evidence did not support customer's slip and fall negligence claim against restaurant).

Rodas has failed to point to any competent evidence showing how long the water on which she slipped remained in Bi-Lo's front entrance area.[3] Unrebutted employee testimony, for that

---

[3] Plaintiff recalls that "a little busboy" Bi-Lo worker named "Corey" was "standing in front of [her]," facing sideways about ten feet away, when she fell. Doc. # 16 at 52-54. However, no one has pointed to any "Corey" testimony about what he saw, much less whether he has any knowledge imputable to Bi-Lo. In her deposition Rodas nevertheless insisted that Bi-Lo employees "knew"

4

matter, reveals routine inspections contemporaneous to plaintiff's fall, doc. # 23 at 98-100,[4] and Bi-Lo's co-manager cites to one having occurred just a half hour before it. Doc. # 22 at 53.

Finally, it is common knowledge that a "track" of water (*i.e.*, a residue of water, tracked into a store by customers, which falls off of their footwear as they traverse a store's front entrance) is something that, after a rain, happens often. Yet, the law simply does not require that owners wipe entrances dry after each customer walks in:

> [I]t is not the duty of persons in control of such buildings to keep a large force of moppers to mop up the rain as fast as it falls or blows in, or is carried in by wet feet or clothing or umbrellas.

*Roberts*, 283 Ga.App at 270 (quotes and cite omitted). In that *Drew* and *Roberts* compel judgment for Bi-Lo here, the remaining issues are moot.

## IV. CONCLUSION

Accordingly, defendant Bi-Lo, Inc.'s motion for summary judgment (doc. # 12) is ***GRANTED***, and plaintiff Julie Rodas's Complaint is ***DISMISSED WITH PREJUDICE***.

This __21__ day of May, 2008.

/s/ B. Avant Edenfield
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

about the presence of the "clear liquid" on the floor where she fell. When asked what supported this knowledge, however, she replied: "it's their job to make sure that they check those areas...." *Id.* at 55. Of course, mere speculation cannot support opposition to a party's summary judgment motion. *See, e.g., Howard v. Oregon Television, Inc.*, 2008 WL 1947094 at * 1 (11th Cir. 5/6/08) (unpublished) ("Speculation does not create a genuine issue of fact") (quotes and cite omitted). Claiming that someone actually "knew" something because it is believed to be their job to know is nothing more than conclusion-driven speculation. Rodas otherwise concedes that she has no reason to think that Bi-Lo actually knew about the liquid's presence. Doc. # 16 at 56.

[4] Plaintiff makes much of the fact that an employee may have doctored or falsified inspection log records, doc. # 20 at 19, but she does not dispute that the alteration (the employee claims this was accidental) went to a time period which began *after* plaintiff's fall. She also complains of (indeed, she seeks punitive damages over) Bi-Lo's failure to change its store's videotape that day (thus causing the instant incident to be taped over), despite Rodas's written request to do so. Doc. # 20 at 7, 19; *see also* doc. # 23 at 54-65 (Bi-Lo employee deposes that she accidently neglected to change the store security tape so that 4/26/06 events were copied over by the following day's event).

However, the evidence to which she points shows negligent, not intentional conduct on that score -- something that is not enough to support an inference adverse to Bi-Lo and thus favorable to her. *See, e.g., Keaton v. Cobb County*, ___ F.3d ___, 2007 WL 4941022 at * 24 (N.D.Ga. 2/19/08) (adverse inference to be drawn from destruction of records is predicated on bad conduct of defendant, and moreover, circumstances of the act must manifest bad faith; mere negligence is not enough, for it does not sustain inference of consciousness of weak case).